Case number 24-5150 et al., Robert B. Bergdahl v. United States of America, Felons. Mr. Hinshelwood v. United States of America, Mr. Feudal, Rivalry, Robert Bergdahl. I think we were starting with government counsel first but... You're quite right, Chief Judge. We're crossing felons, not appellants. And you'll both get rebuttal time. Thank you. Mr. Hinshelwood, please proceed when you're ready. Good morning, Your Honors, and may it please the Court, Brad Hinshelwood for the government. Obergdahl pleaded guilty to two extremely serious offenses outlined in the Uniform Code of Military Justice and, at his own request, was sentenced to a dishonorable discharge with no confinement. If the district court here purported to vacate the judgments of a court-martial, then two military appellate courts established by Congress, based on an asserted violation of military rule and despite the absence of any prejudice to Bergdahl for leaving his voluntary pleas and the sentence in place. That was erroneous at every step. District courts lack jurisdiction to vacate or alter court-martial judgments. That act is the hallmark of appellate jurisdiction, which Congress has entrusted to the military appellate courts and the Supreme Court, not district courts exercising their original jurisdiction. Moreover, a federal court may relieve a service member of the res judicata effects of a military judgment only on the basis of a fundamental constitutional jurisdictional error. Appearance of partiality and apparent unlawful command influence are rule-based prophylactic doctrines, and thus Bergdahl would not be entitled to collateral relief in any event. And even if those hurdles could be overcome, Bergdahl would not be entitled to the vacater. He failed to timely raise his appearance of partiality claim in the military courts and suffers no prejudice even from the purported error he identifies. Can I start off with your threshold position that because this is collateral review and not direct review, vacater was improper? There's no jurisdiction to entertain a suit of this type. I think it's really a threshold position, yes. Well, I mean, I take it the main problem is that the vacater was ordered. Because you can have, if it's, because it's collateral review, vacater can't be implemented because that's something that can only be done on direct review. I thought that was the predicate to your first. That's certainly correct. I want to distinguish between two arguments. We have an argument that even if there is jurisdiction and this is a proper sort of collateral suit, applying a little bit of factors, vacater would not be appropriate. Sorry, I'm not talking about that. Okay. Then there's the threshold point that there is no way in collateral review to seek vacater of a court martial conviction. And I think that's the point that we derive from Councilman. If you look at what Councilman itself says and how it describes collateral review of court martial judgments and of military judgments generally, it says, look, what a court does in collateral review is it considers whether to relieve someone from the race judicata affects a particular judgment. It's the same thing a court does in habeas, for example. So go ahead. Let's suppose that I take your argument that if a collateral action asks for vacater, if that's the collateral action, we're bringing collateral action and we're seeking vacater, that there's some dissonance there because collateral review is not supposed to encompass vacater because that's what you do on direct review. In this case, the complaint also talks about expungement. And what is your theory for why expungement, I assume you think that expungement fits in the same bucket as vacater for these purposes, that there's no jurisdiction to enter expungement either when it's on collateral review as opposed to direct review. And then if the action seeks expungement, then that's also out of bounds in based on your understanding of counsel. And I take the point that as in one conceptualization, expungement also operates against the conviction. So one could take the position that, well, you can't operate a conviction at all on direct, on collateral review. You can only do that on direct review and therefore expungement should be in the same bucket as vacater. Potentially another way to look at it is that expungement actually is distinct from vacater because vacater sets aside the conviction. Expungement actually doesn't set aside the conviction. Expungement leaves the conviction in place, but it deals with some of the consequences of the conviction. And that's more in the can of the type of thing that collateral review can encompass. Am I thinking about that incorrectly? What would be your take on why expungement, I assume in your view, fits within the same bucket as vacater? Right. I think a few points about that. So one is that I don't take Bergdahl here to dispute that by asking for expungement, what he wanted was the district court to vacate. And in fact, he says he wants him to, now he wants the district court to in fact bar the military from ever retrying him. So I don't see that Bergdahl himself perceives any difference between expungement and vacater for these purposes. I would also, I mean, I would also emphasize, I don't understand exactly what difference that would make in this context where we're talking about consequences, all of which are bound up in the judgment. I mean, the dishonorable discharge, which is the central feature, I think, of the objections that Bergdahl is raising here is the primary component of the judgment. I mean, that is its very nature. And it's not obvious to me what expungement would do. And I'm frankly not aware of situations in which federal courts direct, for example, state courts to expunge a judgment as opposed to otherwise within their jurisdiction, because there is some basis, grant some collateral relief, whether that's habeas relief, whether that's back pay or something similar in the military context. So I don't really see in this case any daylight between, you know, expungement and vacater. It's hard to imagine what suing for expungement would get you that's different in this context from vacater of the judgment. And the district court clearly understood it that way and Bergdahl has treated it that way throughout this litigation. At least conceptually. I mean, I understand your position that expungement could be seen as in the same bucket as vacater for these purposes. And I understand your position that there's no federal law of expungement, that there's not a whole, you know, historical tradition of expungement as collateral review. But just as a conceptual matter, it seems to me one could draw a distinction between expungement and vacater in that expungement leaves the conviction in place. So it doesn't actually directly operate against the conviction in the same way that a vacater would because an expungement does leave the conviction in place. It deals with the consequences of the conviction. And it says, for example, you know, I think when a state, state laws have expungement as a possibility in various routes, I don't think those state laws think that what's happening when you expunge a conviction is that you're vacating the conviction. Right. I think sometimes you think about expungement, you do think about expungement of records, for example. But, of course, here Congress established a process by which an individual can seek, you know, an alteration to their military records. I mean, that's the board for correction of military records process. And in that very process, Congress made clear that can't alter the judgment itself. And, of course, Bergdahl hasn't invoked that process. He hasn't exhausted that process and doesn't seek review of any decision emanating from that process. So it's very hard for me to see how, you know, again, accepting that, you know, the decisions of those boards are subject to review, which we do, it's very hard to see how this case could possibly be, you know, one in which that remedy could be properly solved. Because the main complaint, at least, is expungement of the conviction itself. Certainly that's, and that's exactly what the district court here did. I mean, it said I'm vacating, you know, the judgment, the judgment of the Army Corps of Criminal Appeals, the judgment of the CAF, all of it, which is, you know, something that is flatly inconsistent with councilmen. It's not something a federal court could do with respect, for example, to a state court judgment. And it's not something that's, you know... The government didn't point that out to the district court. No, but we believe it's a fundamental jurisdictional limitation on the court's, district court's power. You know, the original jurisdiction conferred by 1331 does not include the power to vacate or alter the judgments of separate and independent court systems. What about the first grounds or type of relief that was requested, but essentially declaratory judgment, the declaration that the conviction and sentence were obtained in violation of the Constitution, Fifth Amendment? Yeah, I mean, you can seek a declaratory judgment, but the declaratory judgment act that enables you to do that is not itself a source of jurisdiction, nor does it create a cause of action. It's just an additional remedy courts can enter. And this court's been very clear about that. So he would still need to point to a source of jurisdiction. The only one he's pointed to is 1331. And we know that 1331 does not empower courts, district courts, to engage in this kind of revision, alteration, vacater of the judgments of coordinate court systems. It can't do it for state court judgments, and it can't do it for military courts. So what are we supposed to do with Avrec, the Secretary of Navy? I don't know that it was cited in the briefs. The district court talked about kind of the companion case to Avrec, which was Priest v. Secretary of Navy. But Priest, decided in 1977 by this court, cites and relies upon Avrec. And in Avrec, interestingly, in both of those panels, retired Justice Tom Clark was on the panel in both of those cases. And in Avrec, the court specifically looks at subject matter jurisdiction and says, and it talks about that the Supreme Court had just kind of recently entertained this issue in councilmen. And they said, you know, we are confident that there is jurisdiction to consider this action seeking post-conviction relief. And I'm trying to recall for certain, but I believe that plaintiff in that case sought declaratory relief, but correct me if I'm wrong. Are you familiar with the case? You know what I'm talking about? I'm familiar with Avrec from its first iteration. I'm not recalling the specific, sounds like a post-councilman on remand, revisitation of Avrec from this court. But as you've described it, it sounds not dissimilar from Priest or other cases where this court has simply made statements about the availability of review without describing what kind of review was being engaged in exactly what, you know, the basis for jurisdiction was or the relief that was sought beyond the declaratory judgment. I mean, there are certainly circumstances where, you know, a court might issue declaratory relief in addition to other forms of relief. And in the cases where this court has, in fact, specified, it's done so either without analysis really at all, as in New, where it said 1331 was the basis of jurisdiction in a single sentence, not briefed, with no citation even to a case. Or in Homsi, for example, which predates councilman, Homsi there, the action was brought as a federal officer mandamus action to challenge a decision of the board for correction of military records. And so that, you know, we agree presents a situation where a court can engage in that kind of review. I think the extent you've described, Everett, to me, it sounds no different from the other cases in which this court simply hasn't engaged with the relevant questions or the analysis of councilman itself. And that's what we're urging the court to do here. We think it's imperative, frankly, that this court address that question and provide guidance to the district courts, because as we noted, we're seeing, you know, an increasing number of these suits. I mean, Everett was decided just a few months after councilman, and they made the point of saying, you know, councilman, the court took briefing on jurisdiction. We've long held in our circuit that there is collateral review in district courts for non-custodial plaintiffs. And our court construed councilman to not affect its prior holdings, including a case called Gallagher and others prior to councilman, that there was jurisdiction. And to take your point, that footnote 13 of councilman in the text, where the court seemed to adopt the reasoning of the First Circuit, in those two cases, Davies and Ash, I think they are, seems to endorse the First Circuit's reasoning, and the First Circuit was critical of our circuit's view of this in Gallagher. So one could say that perhaps the Supreme Court was kind of impliedly criticizing the expansive view that had been previously adopted in the D.C. Circuit. All of those are kind of like fair points that could be made, but that issue seemed to be directly before the court in Everett, and it didn't think that councilman affected its prior precedent at all. So why aren't we bound by that? So I'd make three points about that, Your Honor. First of all, I think all those cases have to be understood in the context of the dispute that had arisen about the effect of Article 76 of the UCMJ and U.S.C. 876 that was at issue in councilman and was at issue in Gallagher and other cases that predated councilman, which is that the government had taken the position that Article 76 actually stripped all jurisdiction for any collateral review, even collateral review that preexisted the UCMJ. And what this court had rejected in Gallagher and what other courts had rejected at times was that broad theory of jurisdiction, and that's exactly what the Supreme Court rejected in councilman. It said, look, Article 76 doesn't have that broad effect. And so what this court's statements since councilman, and it sounds like advocates in this category as well, have said is, well, yeah, the Supreme Court and councilman held that we're not limited to—that Article 76 does not bar collateral review of court martial judgments and doesn't strip our jurisdiction to entertain those suits. And that's absolutely correct. It's just that what councilman says is that there has to be, you know, relief has to be sought in an action otherwise within the court's subject matter jurisdiction. So, I mean, it's just that, you know, in cases where the court has not focused on the question of what the relief is being sought and what the basis of that jurisdiction is, the fact that it acknowledged the plain folding of councilman, which is to reject the government's broad jurisdictional argument, is— And in councilman itself, what was that otherwise basis for subject matter jurisdiction? So the particular suit in councilman was an injunctive action against the secretary in an effort to stop an ongoing court martial. And so there, 1331 was the basis of jurisdiction because that's the basis of jurisdiction for any sort of injunctive suit against a federal officer brought on the basis of, you know, a federal question. So that was the basis for the suit there because it was an injunctive action. It didn't seek to vacate or alter a court martial conviction because there was no conviction to vacate or alter. And the court and councilman was at pains to say, look, you know, there is no direct ability to review the judgments of a court martial. At that time, Supreme Court didn't even have certiorari jurisdiction to review the judgments of the highest military court. So it starts out from that basic premise and then says, look, just the basic principles of the law judgments, the well-settled principles that govern collateral review of judgments across court systems apply with full force to court martial judgments. And so what you need is some action otherwise within district court subject matter jurisdiction, and then you can seek relief from the collateral consequences. That's a habeas action. That's a vacpay suit. There may be others, but I mean, those are kind of the quintessential. And in the First Circuit case that councilman approvingly cites at footnote 13, and you talk about in your brief, the First Circuit held that there was jurisdiction and indeed granted relief and granted an injunction based on the Sixth Amendment Ineffective Assistance of Counsel claim that they found had been established, but the injunction was to order the military authorities to reconsider an administrative claim. Precisely. So Ash, the case you're referring to, the first of the two First Circuit cases that are cited at councilman, Ash, the service member went to the board for correction of military records. He followed that process, and the board for correction of military records denied an alteration in the character of the discharge. And then he sought mandamus under the federal officer mandamus statute 28 U.S.C. 1361 and said, no, no, you have a duty to upgrade my discharge because the conviction on which it is based is void. And the First Circuit said, yes, we have jurisdiction to entertain that kind of suit, and we grant the writ of mandamus. We think that that was correct. But then a few years later in Davies, which is the second case, we have an individual who comes in and says, you know, that individual actually already gotten an upgrade from the board. But then he comes in and he files an action for a declaratory judgment, and he says, I need you, federal court, to, like, wipe out this judgment and totally eliminate it. And the First Circuit says, well, you know, we can't do that. We have no direct jurisdiction to review the military courts. And unlike Ash, which sought, quote, collateral administrative relief, you're just here asking us to, you know, vacate, alter, ignore, declare void a judgment of a coordinate court system, and we can't do that. And that's exactly what the distinction that footnote 13 in counsel notes referring to sets up. It says, look, you compare these two cases. That's the difference. You can go through the administrative process. You can seek review. Erdogan, of course, hasn't done that here. But that is another available route by which you can the validity of the judgment, and then there is an action otherwise within the court subject matter jurisdiction to get review of that in federal district court. Can I take you back to expungement for a minute? Because I had the same reaction as the chief judge. I'm not quite sure what to make of it. So I look at this, I look at the jurisdictional cannot formally vacate the judgment of conviction. That sounds pellet. But some kinds of collateral relief are available, and the obvious ones are habeas for custody and back pay for money. And those address some but not all consequences of a judgment. There's another theory of lateral review. I believe courts, there's a mechanism for administrative correction of records. And that sounds to me like what happens in that sort of action, and how is that different from expungement? You're talking about the military's process for administrative correction of records? Right. So an individual can petition one of the relevant board for correction of military records. There's one for each military. And what happens if you get the record corrected? Well, so what Congress has said is that with respect to court martial judgments, those boards are limited in their power. They may upgrade the character of a discharge for purposes of clemency, but they cannot act on the conviction itself. They cannot vacate, eliminate, alter the judgment, except insofar as they may grant clemency. Can they reinstate the service member? I don't believe that's an available remedy. But I'm not sure for someone who's, I mean, commonly these are brought by people who are already out of the service and generally don't want to go back in the service. I'm not aware that they could do that. I haven't looked to see precisely. But at a minimum, it just seems like one plausible line between appellate and collateral review is will the judicial relief wipe away all the consequences of the judgment? I certainly think that's one way to think about it. And I think that the, you know, the relevance of that administrative process is just to illustrate how remarkable it would be if a federal district court could have more authority than the very bodies Congress has tasked with reviewing these requests and could, in some sense, you know, eliminate these judgments in a way that, you know, that very body isn't empowered to do after someone has exhausted all the direct appeals within the military boards and had a fully affirmed judgment. You can't, again, I think the analogy to state court proceedings is helpful. I mean, I'm not aware of cases in which individuals come in and say they would like, you know, a federal court to order the expungement of state court, you know, judgments or try to wipe out all the effects. Typically, what you see is a habeas petition. And everyone recognizes in habeas that you're not reviewing the judgment. You're reviewing the lawfulness of the detention itself and that the judgment itself is ultimately unaffected. It's going to remain on the books. You may be able to go pursue some state process to get that judgment, you know, wiped away in some fashion after you've been granted habeas, but habeas itself doesn't act on it. This administrative correction thing, it only happens pursuant to the statutorily authorized scheme, administrative review, and then whatever limited judicial review is available from that. It never happens through 1331 as a purportedly original action. Right. I mean, this court has not been specific about what jurisdictional basis it reviews those decisions under, whether that's 1331, which is, of course, the basis for most students under the APA. And the cases where it has been specific, such as HOMC, it specified it was reviewing it as a matter of the federal officer mandating the statute, but using 1361. So, but to my knowledge, a lot of the other court, this court's other decisions review other decisions not related of the boards, not related to, you know, void court martial convictions. I don't know that they specified which source of jurisdiction is being invoked. So, there is collateral review of that administrative apparatus? I mean, calling it collateral review is a little awkward. It's collateral review of the judgment of the military courts in the sense that you can call into question the validity of the judgment. It's a, you know, sort of direct review of the administrative decision. Just to be clear, if a military administrative board declines to correct records, that can be reviewed? Correct. That is HOMC. That is what happened in HOMC. This court, the individual was denied relief by the board for correction of military records, the district court. And that goes to district court. There's no specialized review scheme channeling it to a court of appeals? I believe that's correct, yes. And in fact, in HOMC, it went to district court first, it came to this court, and this court actually affirmed the grant of mandamus relief on the ground that there had been a fundamental constitutional error in HOMC's court martial, and therefore the board was required as a matter of sort of the federal officer mandamus statute. In the military system, is there military court review of the administrative body's determination before? There's no? Not that I'm aware of, no. Okay. Can I ask this question that I think tries to figure out what the dividing line might be between what could be permissible vis-a-vis expungement and what puts expungement in the vacator category and under your theory, which has some force, would be impermissible under a collateral review? And by impermissible, I mean no jurisdiction, not the jurisdiction, the how you do vacator. If somebody brings an action, suppose Bergdahl brought an action that says, I'm bringing a 1331 action against the Secretary of the Army, and what I want the Secretary of the Army to do is to not expunge my conviction, but expunge the record of my conviction. So expunging the record is not expunging the conviction itself, because I take the point that expunging the conviction, I don't know what the distinction is between expunging the conviction and vacating the conviction, maybe there is one, but there are expungement of records which leave the conviction intact. And suppose the suit that's brought, there may be all kinds of other issues with the suit, but I'm just, for the purposes of this particular argument, that there's no jurisdiction for a district court to take up an action that seeks the relief of the kind that you think is being sought here. Would that be remedied if the way the suit was framed is not one against the United States that seeks expungement of a conviction, but one against the Secretary of the Force that seeks expungement of the records of the conviction? So two threshold things about that. So first of all, by suing the officer, you would obviously avoid the sovereign immunity problem that this suit is plagued with. So I mean, that's one reason I assume that you put that part of the hypothetical in there. So separately, as we pointed out, there's a sovereign immunity problem with this particular suit. And then separately, the second, of course, I think I pointed out, that isn't the remedy that was actually granted here. So at a minimum, I couldn't support this judgment. But it's not obvious to me whether, I certainly agree there would be numerous problems with that suit, whether that's failure to exhaust administrative remedies, whether the provision of those administrative remedies by Congress implicitly forecloses other remedies, such as the expungement of the records themselves. I think all of those issues would be raised. I think it might present a somewhat different question. Again, I don't see how you draw the distinction between expungement and vacater for purposes of this case, or what records beyond the records of the court-martial, frankly, Murdoch cares about having. In state systems, there's ways to get records of criminal proceedings. Sometimes it's arrest, sometimes it's indictment. But there's also ways to get records of a conviction expunged. And that, in a colloquial way, that's a collateral proceeding, because it actually isn't seeking to have anything done with the conviction itself. It's just saying, I want to be relieved because I was acquitted. Well, that wouldn't be a conviction. But I want to be relieved because this is a minor offense, and I've been rehabilitated. And therefore, I just want the record of the conviction gone. I'm not saying that I want the conviction gone. The conviction happened. Right. So I'm not aware that that is available in federal court. And even to the extent... As I understand it, to the extent courts have suggested that it is available, it is because it is the court exercising power over its own records and over its own... I understand. I totally understand. None of which would be true here. I get that, too. That would be kind of in the direct review chain. All I'm saying is, and this is not meant to say that on this case, it makes a difference. What I'm saying is, if the complaint had been styled in that way, then there may be all kinds of other problems with it. But it seems to me there'd be at least a reasonable basis for thinking it doesn't fall prey to your threshold submission, which is, this case is problematic for purposes of appellate review because it's seeking vacator of the conviction or the effective equivalent of vacator of the conviction. But a suit against the secretary that only seeks expungement of the records, as opposed to the conviction itself, just strikes me for those purposes of potentially being distinct. I think you could reserve the question of whether a suit like that could go forward, whether under this theory or otherwise, and obviously recognizing the other problems with it. We certainly don't need you to decide that today for us to win and for this... I'm trying to understand the conceptual parameters of your argument. Right. I mean, it gets into some questions that obviously weren't briefed here about the availability of an expungement remedy and how that might apply across court systems, which I tend to think just from my knowledge of that area, at least that I have it, it'd be pretty remarkable to think that there's some power to do that. Whether that's properly phrased as a 1331 problem or something else, I think the court could need that for another day. Just based on your threshold argument. And then can I just follow up on this basis that you've brought up the sovereign immunity question a couple of times. So when you brought up sovereign immunity in your briefing, it's always kind of the tag along paragraph at the very end that's just an appendage to the argument that you're already making, as opposed to a standalone, hey, this should be dismissed for sovereign immunity purposes. And is the reason for that because if the suit were restyled to be won against a secretary, but essentially was the same suit, then there wouldn't be a sovereign immunity problem. And that's why you don't have a separate argument heading that this should be dismissed based on sovereign immunity or was there something else going? I think the whole premise of the Blarsen-Dugan and Ex parte Young sort of constructs is that you can plead around sovereign immunity. And part of the reason that we foregrounded the broader question is, as we pointed out in our brief, there has been a certain degree of confusion or at least mission creep from the district court in terms of what it thinks it can do with respect to the military courts and their judgments, what it can review, what questions it believes are in front of it, whether it can enter relief of this type. This district has seen, I think, far more suits in the last few years, as we pointed out in our brief, than any district has seen maybe ever. And that's, I think, in part a product of some of the loose language and some of this court's prior opinions. And I think that's why we would urge the court to reach and decide that question, because we think it's critical to giving guidance to the district court. Of course, you could separately reverse this on the simple ground that there's no waiver of sovereign immunity. But we think it's imperative that the court reach the more central question, jurisdictional question here, that applies more broadly. My colleagues don't have additional. Just getting to the merits, assume we need to get to the merits. Isn't it the case that there are recusal issues that rise to the level of due process violation? And the standard seems to be based on Caperton and all of the cases that it cites, and you kind of follow it back, simply whether looking at it, the judge sitting on the case, whether it would offer a possible temptation to the average judge to lead them to not hold the balance nice, clear, and true, the standard is. So do you disagree that that's the standard to establish a due process violation? Caperton certainly sets out the relevant standard, and it emphasizes that that standard is a very high bar. There are certainly lots of circumstances that would be covered by the rules that are not due process issues, and that's why a number of cases in which the court has found a due process problem with an adjudicator are, you know, you can count them pretty much on one hand. So, you know, I don't think that there's, I don't dispute that Caperton lays out the relevant standard, but it's not that. Well, you portray this as just simply a case where maybe there was a violation of a rule or of a statute, but it's not a violation of due process, and I just wanted to engage with you on that when, you know, the Supreme Court hasn't said that there's got to be a direct pecuniary kind of benefit for a judge sitting on a case for it to violate due process. The judge can have a kind of pecuniary interest that's, like, indirect and still meet due process. In here, you have a situation where the allegations are that the judge was applying for a job with the United States in the executive branch, which is headed by the president. The president wanted a specific outcome, made that very clear. The applicant even touted this case on his job application as one of the, you know, key parts of why he was qualified for this job in the executive branch, and went so far as to include a ruling he made on a key issue in this case as his writing sample. So the applicant linked this case, kind of wanted to ride this case as a basis to get this job, which obviously would provide pecuniary benefit if he got it. Instead of sitting on this porch in his rocking chair collecting his military pension, he can double-deb it and get another salary and continue his legal career. So why in the world doesn't that meet the Caperton standard? Your Honor, I think you go back and look at Toomey and the pecuniary interest cases specifically that address the due process standard. What those cases make clear is that it does have to be a relatively direct relationship between the claimed interest and the judicial decision. So, I mean, in Toomey it was, you get paid only if you condemn it, and it's immediate dollars in your pocket. In LaVoy, what the Supreme Court said was, well, one justice who has a pending claim whose value will absolutely skyrocket if he decides the claim is viable in another case, that person has a conflict. But the other justice in the Alabama Supreme Court who are just potential class members in that lawsuit don't have a disqualifying interest as a due process matter, that their interest is too speculative and remote. So, you know, that kind of tight nexus is what the Supreme Court has looked for. And so here what you have is a situation where there are a lot of things that have to happen between Judge Nance submitting his application and getting the job, any of which could, you know, lead to him not getting or getting the job independent of anything going on in this case. There's no allegation that his military salary or his military pension is in any way dependent on his decision here. It's all about the speculation of, okay, well, if he does this, if he does that, if he succeeds at the interview, if he, you know, impresses the right people, if his resume is good, if they have enough positions, you know, maybe he'll get hired. That's a much more attenuated chain than anything the court has recognized. But let's put an issue that if you think I've done a good job in this case, in this very important case, that's the reason why you should hire me. Your Honor, that's no different, I would just say, from anybody campaigning for a judgeship. And we don't think that's a due process problem. I think, if anything, this is less problematic than someone campaigning for a judgeship who, you know, is obviously their success, their activities on the bench are going to be known if they're running for re-election. But at the same time, just on those facts, I just want to point out the particular writing sample he submits is repeatedly critical of the President's statements. And in fact, says that the statements, he denies the motion in that writing sample for reasons that are legal reasons that are uncontested here, and the district court did not question. And in the event, we know that what Judge Nance did does not look anything like what the President requested, and the fact the President was relatively displeased with the ultimate result. So I think it's a little hard. One of the things he could have done that he didn't do was to say this should be a special court month, right? No, Judge Nance could not have done that. That's not within Judge Nance's power. That was only within the convening authority's power. Judge Nance, at the time, the only things Judge Nance did from the time he submitted the application to the time relevant here is that Judge Nance accepted Bergdahl's voluntary guilty pleas, which Bergdahl does not suggest were involuntary or weren't serious, and then sentenced Bergdahl to the sentence that Bergdahl himself requested, which was a dishonorable discharge. He denied the third unlawful command influence motion, but the third unlawful command influence motion requested, as its relief, either a sentence of no confinement or a punitive discharge. I mean, that's what Bergdahl asked for. That's what he got. He requested what? So the third motion, which was filed after the plea, Bergdahl requested, as the relief, not dismissal of the case, which is what he had requested in the first two motions, but instead requested either, you know, no punishment or, you know, no confinement sentence. That was the relief requested in the motion. The district court here erroneously, at a couple points in his opinion, says that he requested dismissal. We've cited the relevant pages of the record that show that's not correct. And a discharge other than dishonorable discharge was not an option? I don't know if that would have been an option, but remember Bergdahl himself had requested a dishonorable discharge. And, you know, as the Army Court of Criminal Justice pointed out, it would have been pretty remarkable not to accept that, given that, you know, frankly, he could have, and, you know, in the prosecutions, you should have gotten a much more severe sentence that included confinement. Sorry. No, I'm finished. Um, assuming we reach the merits, what do you think should be our scope and standard of review? That's another area in which our cases might have some tensions. Right. Well, I think while you correctly point out that this court has expressed some difficulty figuring out exactly what the standard is for noncustodial cases, the one commonality across habeas and noncustodial cases is that the error asserted has to be jurisdictional or constitutional in nature. And the district court here, I think everyone recognizes, ruled solely on a rule-based... So all the rule-based things fall out. Yes, and, you know, I think that's why, you know, there's now this argument about sort of a Toomey-type due process problem, which the district court did not accept and, in fact, said it wasn't finding any actual bias here. Do you accept that with regard to constitutional due process claims, the standard of review is de novo? Well, what the...I mean, there's a few issues wrapped up in there. So one is, I mean, to the extent the military courts have already considered a particular question, you know, that's not something that a federal court can, in collateral review, necessarily revisit. And what councilman itself says about noncustodial cases is that only certain errors are going to rise to the level of... He said jurisdictional or constitutional. Sort of fundamental constitutional errors. Focus on the constitutional. Is it de novo review? I mean, that seems kind of extraordinary since we don't do that in regular civil habeas. We don't. And I think, again, where the military courts have considered a question, I don't think, you know, for example, if you look at the 10th Circuit's military habeas jurisprudence, which is by far the most developed because of Fort Leavenworth, I think they make very clear, you know, they are looking, first of all, for constitutional errors. And then they're providing, you know, where the military courts have engaged in full and fair review of those questions, you know, they are not going to question those to the extent that, you know, those courts have engaged those questions. The complication here, of course, is that Bergdahl did not timely raise this particular claim before the military courts. And so I think his submission is, well, you know, you should review it de novo because it was never passed upon by the military courts. We think that falls, you know, to the extent there are comparable doctrines. It's doctrines of procedural default and other things that come out of the habeas context where he would have to show cause and prejudice, you know, and other things. But... ...to overcome the Army Court of Appeals ruling on essentially procedural default. Yes, I think that's right, that he would need to show that, you know, what the Army Court of Appeals held on his forum notice petition was that he could and should have raised this question earlier, and he had failed to do so. And that application by a military court of the military's own procedural rules and own procedural precedents is not a basis on which the district court can revisit that particular question. Federal courts in habeas for state, you know, for state convictions don't sit to review state court's applications of their own procedural timeliness rules and other rules, and it's no different for the military courts. ...unless the procedural default ruling itself violates due process. Right. And I don't think there's any real claim of that here, particularly where, I mean, he briefed the question of whether he had timely raised it. He knew he had to brief it. It's throughout...it's one of the primary issues in the briefing on the quorum notice petition, and the Army Court of Criminal Appeals rejected on precisely that ground. You know, even that judgment shouldn't, you know, it's not something a court can revisit. In any event, you know, it seems plainly correct insofar as Bernal clearly knew about Judge Nance's application at the time that the CAF's judgment was issued. You know, Judge Nance had been announced as an immigration judge. How do you say he clearly knew about it? Because he submitted a FOIA request for it the same day that the CAF issued its opinion. So clearly he knew about it that day. He's never said when he learned about it, presumably before that date or at the latest that date. But, I mean, that's what I'm trying to get at. Why is the presumption that he had to know about it the day before he submitted it? I'm not saying there's a presumption he had to know about the day before, but he's never said that he learned about it the day of the CAF's decision. He has never said when he learned about it, which he would have needed to show to demonstrate that he had acted in a timely way. But I think the inference you can draw from that is that he knew before the day of the CAF's decision. And if that's true, then there's every reason to think that, you know, he should have sought the application the day before the CAF's decision or two days before or a week before, you know, whenever he learned about it. So thank you, Counsel, for your time and rebuttal. Thank you, Mr. Fine. I want to make this report with me at the Council table as Professor Frank Rosenblatt co-counseled with me in this case from the beginning. And let me begin with what I think the Court ought to be focusing on, and I will be happy to respond to a number of the points that were made in the government submission and in response to some of the questions from the bench. It seems to me, and I have to confess I'm torn on what I'm about to say, but it seems to me that the chief question before this Court is, does this Court grasp the nettle and address the unlawful command-to-influence issue based on a full record that includes the various problems, what I'll call for shorthand the Nashiri piece, or does this Court remand to the District Court, to Judge Walton, to do what we think should have been done in the first place? To this instant in time, no Court has taken Colonel Nance's job situation and his representations as to his personal plans into account in connection with the unlawful command-to-influence issue to which Your Honor adverted before. No Court has done that. The Army Court of Criminal Appeals on Coram Nobis did not do that. They said we were too late, and we've fully gone into this in the briefs. I don't know what more we can say. Until we obtained the job application, we did not know that Judge Colonel Nance had applied during the trial, and we could not have known that his representations to us about his future plans were frugal with information. And as a result, as we briefed this, we were not on inquiry notice to turn over every stone. And if I can say very, very briefly on this point, and then I'd like to move on to a number of the other points and the quandary that I referred to at the beginning, the Supreme Court, the case that we cited, I'm thinking of Listecki and the Listecki case, said, look, the problem on a nondisclosure of a disqualification or potential disqualification rests with the judge who should have made the disclosure. And if you go back and look at the—and I may be mispronouncing this case name too—the Louisburg case, Liljeburg case, you'll see that the last point in the Supreme Court's opinion says, look, we wouldn't even have this problem had the trial judge made a candid disclosure of the concerning conflict of interest. So this whole fixation that the government has had about who knew what when, p.s. they never disclosed when, they first found out that Judge Colonel Nance had filed to become an immigration judge is besides the point. The burden here was on Colonel Nance to disclose rather than for us to go rummaging and make a FOIA request. Can I take you to—and there may well be questions about that to understand some of the dynamics in terms of the dates and those things. But can I just take you back to the threshold argument that the government makes, which is that there's no jurisdiction on collateral review to do what the district court did here and I think what you asked for. And in terms of what you asked for, I'm looking at the conclusion of your brief before us, which ends by saying, the case should be remanded with instructions to set aside the court-martial and all related proceedings and dismiss the charges and specifications with prejudice. So, I take it what you're asking for in this case is set aside, which I think is vacater. Dismissal with prejudice means nothing can ever be brought again. How is that appropriate for a district court to do on collateral review? Because it's not—that's not collateral relief. That's the kind of relief you get on direct review. All collateral review, as far as I'm aware, takes the judgment as a given and then deals with consequences of the judgment. But by your own framing of the conclusion of your brief before us, you're not taking the judgment as a given. In fact, you're trying to set aside the judgment, which just seems like the type of thing one would do on direct review, including cert in the Supreme Court, but not for us and not for the district court. Got it. I want to make a couple of remarks in that connection. The first is the reference to the collateral review of other court systems is really a reference to state court systems. The prosecution in this case was a prosecution in the name of the United States. This is not some foreign court. It's not a court of the state of Maryland. So there's a kind of category error, I believe. But let me assume that there's some metaphysical harmony between those two points. To me, that's a major issue. Section 1331 doesn't have an exception. It talks about all federal questions, and this is a federal question. So there's a sense in which we're on a different wavelength entirely from the government on this. But setting that aside, if you look back to what we requested from the Court of Appeals for the Armed Forces, which I'll call CAF for convenience purposes, we requested their dismissal with prejudice or in the alternative, a sentence of no punishment. In the complaint, which I think is the ultimate governing document, I have it right here. Yes. If you look, Your Honor, at 187, order that the conviction be expunged and that all rights, privileges, and property of which he has been deprived by reason of the conviction be restored. Yes. You are asking for a formal set-aside. A set-aside is a formal matter, and you are asking for all of the relief you would get on direct review as a substantive matter. Judge Katsas, you neglected to read the preceding prayer, which is the first one, which reads as follows on page 487 of the Joint Appendix. We pray that the court enter judgment declaring that his conviction and sentence were obtained in violation of the Fifth Amendment, RCM 104A1 and 902, and Rule 2.11 of the Rules of Judicial Conduct for Army Trial and Appellate Judges. That was the primary relief we asked for. Sorry, go ahead. That doesn't get you anything more. That just raises the question whether the Declaratory Judgment Act gives you an independent basis for jurisdiction. The basis of jurisdiction is Section 1331, and the Fifth Amendment raises a federal question, as do the other regulations. I think the logical left shot of that would be, I think, that then on collateral review, and it has to be collateral review because there's habeas challenges that are brought. Nobody thinks that habeas is something other than collateral review. So then you could always bring a 1331 action that seeks nothing other than a declaration that a court-martial was invalid. Invalid under the Constitution and a federal rule? Yes. So that's your submission, is that put aside your second prayer for relief, just Paragraph A. If this is only a Paragraph A suit, then every time there's a court-martial that goes all the way up to the Supreme Court, search denied, then the person who's the subject of the court-martial can always bring a 1331 collateral action that seeks nothing other than a declaration that the court-martial was invalid. Yes, that is our submission. Okay. Then can I ask you on B, put aside A for a second and just let me ask you about B. Is there any difference between what you're seeking in B and asking for set aside of the court-martial? I see. I take your point. Now I'm following. You could argue that a conviction can be expunged. That expungement means expunging records, typically. That a conviction could be expunged and yet continue to enjoy some juridical status. For example, I'm thinking on my feet here, but the law as I understand it with respect to pardons is that a pardon leaves the conviction intact. And please correct me if I'm mistaken. So there is some possibility here. We're dealing in a bit of metaphysics, but there is some possibility that a conviction could survive in some ethereal way. I mean, that could be the case of the pardon. It depends on various things. But is that what you're talking about? Because then why in your brief to us are you saying the case should be remanded with instruction to set aside the court-martial and all related proceedings and dismiss the charges and specifications with prejudice? If you were to read that, excuse me, if you were to enter an order declaring the conviction to have been obtained in violation of the Fifth Amendment, et cetera, that would be substantial relief as to which we do not believe there is a significant jurisdictional question. That's on the declaration part. What's that? That's on the declaration part. Yes, that is on the declaration part. Now, what would happen? The declaration doesn't set aside a conviction. I'm sorry? The declaration doesn't set aside a conviction. Yes, that is correct. It doesn't. So my friend has invited the court's attention to the record correction process, and I know the panel has had some questions about that. This is a—and they have faulted us for failing to go to the correction board. You don't have to exhaust a futile remedy. And the statute, if you look at the statute for the correction of records, it says that you cannot get relief other than for clemency purposes from the Board for Correction of Military Records. So that is not responsive to the matter at hand. We cannot go there and ask—it would be a complete waste of everybody's time and effort to go to the correction board. That's a remedy that—it's like the sign you see in the Tex-Mex restaurants, tenemos pero no hay. We have it, but we don't have any. It's an illusory claim. Correction boards cannot grant that relief. So that's just in response to that. But I wanted to make a couple of other observations, if I may. I'd like you to respond directly to the argument made that I think is the linchpin of the government's lack of jurisdiction argument.  That the sentence that precedes footnote 13 of counselment, when it says that the type of collateral attacks that the court says are proper are those that are necessarily incident to relief otherwise within the court's power to grant. So you can get your declaration that a judgment is void, but it has to be part of some other cause of action that the court necessarily has the power to grant relief. Well, the declaration— Do you agree that that is the way we should be thinking about the jurisdiction of the district court? I actually don't. I actually don't. I think that this court's repeated entertainment of cases seeking collateral review in noncustodial settings are the law of the circuit, and that these cases can properly proceed. And this court's repeated cases getting to the merits speak to that. It's interesting. If you read the court's precedent, somehow the court always winds up talking ultimately connecting with the merits of the case, as I think it should do in this case. Well, what about the fact that Councilman favorably cites these two First Circuit cases, Ash and Davies? Ash and Davies takes a completely different view of subject matter jurisdiction in our circuit and says that it does. Shouldn't we take some—consider that to be significant? No, and here's why. This court has repeatedly had cases in which questions of jurisdiction have come up, and has—and these are post-Councilman cases, obviously, and it's never read that footnote to be part of the Supreme Court's holding in the case, a random citation. And by the way, in Councilman— Well, it also cites the restatement, the then-current 1942 version of the restatement judgments, which I printed out and read, and it seems to be consistent with the government's argument. Well, the full Court of Appeals would have to overturn a number of its own prior decisions then in order to reach that— The government's argument is that, you know, the Supreme Court has said that drive-by jurisdictional rulings are precedent that have to be respected, in that this specific point our court has never fully engaged with, whether the collateral review has to be a part of something else that the court has jurisdiction to do, whether it's a mandamus of an official to correct a record or back pay or whatever it is, that that issue has never been squarely joined. Here's my problem. The drive-by is a wonderful phrase. It's lively, and it suggests, you know, its own conclusion. But my concern is I have yet to hear from the government what exactly is left. Do they really want us to take this case over to the claims court and sue for back pay? Do they really want that after all these years? And are we going to meet the same kind of argument again at the claims court? We know we can't go to the correction board. That's pointless. I find—I have the impression that there's actually no there there, and what the government's position would be is to turn collateral review for people who are either no longer behind bars or never were behind bars into an illusion. And I don't think this court should lightly go down that path. Did you see Supreme Court review? Did you see Supreme Court review? We did not see Supreme Court review, and the—what I can say on that subject is for collateral review, recourse to the Supreme Court is not required. I'm familiar with the law in habeas because there's a lot of it. And you don't have to go to the Supreme Court in order to— I'm not suggesting that it's not a requirement. I was just wondering whether in terms of what you could have done, their direct review would include a cert petition. Well, Chief Judge, that's—yes, it's a not unfair question. I have to say, though, that the way the case, the posture of the case, leaving, you know, when the military justice, when the military appellate courts had finally gotten done with it, was so encrusted procedurally that there was absolutely no way—it would have not only been futile, but virtually frivolous to try to shoehorn it into the Supreme Court stocket. There are cases that are good vehicles. There are cases that are terrible vehicles. And this would not have been a good vehicle. You know, but I do—may I make a few other comments? If you— You can have—on what? On what I started to say, which was what I think is the problem in the case, what I think is the problem in the case. I'll briefly, by the way, just sharpshoot one point. That is the sovereign immunity question. And I'll just refer the court to Trudeau against the Federal Trade Commission, which says, look, there's no sovereign immunity problem. We didn't ask for money. This is for declaratory and injunctive relation. As I understand the jurisprudence on sovereign immunity, it's a non-issue, therefore. I'll leave it at that. Trudeau relied on APA 702, and APA 701 defines the waiver of sovereign immunity with respect to agencies and officers of agencies, and that is not who is on the backside of the V in your lawsuit. Right. Number one, my understanding is that in cases where the United States is sued, as opposed to a particular officer or official, that resolves into a question of the relief as opposed to who is the proper party. That's my understanding of the case law. The additional point is, if you look at the footnote that I'm sure you're focusing on, the footnote says, look, this is not confined to APA cases. I understand it's not confined to APA cases, and we've held that repeatedly, but it is confined to parties. I believe the case law, and I will be happy to file something on this if you would like it, Reinhart, but I believe the case law is that the focusing on the party goes to whom an order would be issued as opposed to who is in the caption. It's also, you know... Even if that's the case, if the party that the order would go against is not someone who falls within Section 701, then how do you get a waiver of sovereign immunity? It's because we're not asking for money damages at all. Does the Secretary of Defense have authority to modify a CAF judgment? No, Your Honor. I would think not. No. How can this work? The order has to run against the CAF and the courts underneath it. I actually think not, with all respect, Your Honor. How is it redressable? You can amend the complaint to sue the Secretary of Defense, and then you're just trading a sovereign immunity problem for a redressability problem, because the Secretary of Defense can't undo the CAF judgment. However, Your Honor, if you look at the core, what I will say is the core of our complaint, which is the first item in the prayer, a declaratory judgment, is a declaration to the world. It's not a declaration to the Secretary of Defense or whatever his title is this week. So, if I may, I would like to... Well, you're going to have three minutes for rebuttal and to address anything in the cross appeal for rebuttal purposes. I just want to make sure my... Well, what I wanted to say, Your Honor, is not in the nature of rebuttal to something the counsel might say on his rebuttal, but it's in the nature of my affirmative case. So, might I... You could take, very briefly, you take a minute to do that. You're very kind. What I would like to do is invite the court's attention to Judge Walton's opinion on reconsideration, in which, and this gets to Judge Capsos's point, is what is the standard of review here? And if you look at the... We briefed this in some detail. The test that the court has most recently stated is there should be a close look. What's the difference between a close look, hard look? It can be phrased a number of ways, but here's the concern. If you look at what Judge Walton... One can extract from the Kauffman case, going all the way back to the 60s, a suggestion of de novo review on non-custodial collateral review. That seems an awful lot. Well, there is... Don't be so fast on that, Judge Capsos. Here's why. We wouldn't do that in ordinary habeas. Well, except, and this is Burns v. Wilson, except if the military courts have not addressed an issue. Where they've not addressed an issue, Burns v. Wilson says, then it's subject to de novo review. And that's what we're dealing with. What issue was not addressed? The military courts never addressed Colonel Nance's problem with the immigration judge. If the military courts apply something like a procedural default rule, which state courts do all the time to frustrate habeas. Well, you'd have to unpack that, including judicial review, including, may I say, a serious recusal issue that infected the military court's consideration on that specific point. And the district court thought, well, it didn't make any difference because one of the judges happened to be married to a person who worked in the criminal law division that's responsible for high-profile cases, of which this is one of the highest. With all respect to Judge Walton, that was incorrect. I think it factually was incorrect because Colonel Walker's husband was not simply one of 10 lawyers in the criminal law division. He was the head of the criminal law division, which we think disqualified Colonel Walker and therefore removes any ground for reliance on the Army Court of Criminal Appeals decision on the Coram Nobis, which is the only time they confronted the issue of Judge Colonel Nance's job and his frugality with information. Okay. Let me make sure my colleagues don't have additional questions for you at this time. We'll give you a little time for rebuttal. Thank you very much, Ross. You're welcome, sir. Mr. Hensherwood, we'll give you 30 minutes. Sure. Your Honor, just very briefly. With respect to, you know, the primary basis of our appeal, I did not hear my colleague offer really any basis on which you could affirm this particular judgment. Or do I think there's any real distinction that can be drawn between the request for relief here and what he in fact got, which was a vacater of all the decisions. So whatever else you might think about other avenues for collateral review, this plainly was not and could not be that. With respect to the apparent unlawful command influence claim, which I think forms the basis of the cross appeal, just a couple of quick points. One being that that would equally be, you know, unavailable for review on the jurisdictional theory we've advanced. And in addition, apparent unlawful command influence, like an appearance of partiality under the federal rules or under Wilfred Court Martial 902A, is a statutory prophylactic doctrine, not itself a due process problem. That's distinct from potential actual unlawful command influence, which Bergdahl never raised before the military courts. And the Supreme Court said that they don't have to find actual bias to find the due process violation, that it can be an appearance. Well, the Supreme Court in Caperton distinguished, made clear that it's an objective inquiry for the sort of due process problem. And that that is nevertheless distinct from an appearance problem, that appearance rules are themselves more prophylactic. That is the very nature of those rules. Remember, appearance recusals didn't exist under federal law until 1974. So I mean, there was a long period, almost 200 years, where federal courts had no such rules with respect to judges. So it is certainly an objective inquiry, but it's not one that's, you know, overlapping with, or the same as the appearance inquiry. That's a central focus of Caperton itself. And with respect to unlawful command influence, I mean, apparent unlawful command influence, which is the only basis that Bergdahl presented to the military courts, and is pursued here, is itself another sort of prophylactic doctrine that is not, you know, constitutional in nature. And in fact, as we pointed out, it may be that Congress has abolished that doctrine. The CAF hasn't settled that question yet, to my knowledge, but certainly military appellate courts have understood that Congress, have understood recent amendments by Congress to abolish that doctrine altogether. So even, again, assuming that there was some jurisdictional hook here, the apparent unlawful command influence claim that he presses is not one on which he could obtain collaborative relief in any event. If there are no further questions, I would simply rest my briefs. Thank you, counsel. Thank you. Mr. Freidel, we'll also give you three minutes. I'll ask you to keep it to three minutes, but feel free to discuss what you'd like. Thank you. First, with regard to the government's claim that we never raised the apparent UCI issue in the military courts, we obviously raised it repeatedly. The government said that we requested, we did not request dismissal with prejudice at the time that President Trump, as he was in his first term, spoke in the Rose Garden at a news conference and said that everybody knows what I believe. We actually objected time and time again, and importantly, although we didn't request dismissal with prejudice in the motion that followed that, the Rose Garden incident, we presented the case to the Court of Appeals for the Armed Forces from the beginning as the entire cluster of apparent unlawful command influence, including President Trump's subsequent description of the sentence in this case as a complete and total disgrace to our nation and our armed forces, and the late Senator McCain's meddling in the administration of justice way up front. That's point one. Point two is I would like to say that if it turns out that this court concludes that it cannot do anything to remedy the problem raised by Colonel Nance's behavior, that would mean that unlawful belligerence tried before the military commissions get better protection in terms of judicial independence and judicial disclosure than American GIs, and I must say that is a perverse outcome. And finally, I'd like to point to, again, Judge Walton's opinion on reconsideration. He makes a number of points, one of which is you're getting all the relief you're entitled to. I don't have to rule on your UCI complaint because you're getting all the relief you're entitled to on the Nashiri front. The answer is relief for UCI includes dismissal with or without prejudice, among other remedies. I was quite startled by what counsel said just now that maybe Congress has repealed the apparent UCI doctrine. That is directly contrary to the legislative history. I'm proud to say it. I believe in legislative history. Sue me. But I believe in it, and the record is perfectly clear that Congress rejected an attempt by the administration to zero out, in so many words, the apparent UCI doctrine that CAP has created and nourished over the years. So I think that's a point that really has to be hammered. Additionally, and I'm— Can I ask you to bring it to a close? I hereby do that. The factors cited by Judge Walton for declining to interfere with the CAP decision don't wash. They have nothing to do with UCI, whether the government proved its case beyond a reasonable doubt, which was its burden under CAP's law or not. Thank you very much for your patience, Your Honor. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Wilkins; Katsas